UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TANISHA W.,

Plaintiff,

                                        Case No. 1:21-cv-00575-TPK

       v.

COMMISSIONER OF SOCIAL                    OPINION AND ORDER
SECURITY,

Defendant.

## OPINION AND ORDER

Plaintiff filed this action under 42 U.S.C. §405(g) seeking review of a final decision of the Commissioner of Social Security.  That decision, issued by the Appeals Council on April 2, 2021, denied Plaintiff's application for supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 7), and the Commissioner has filed a similar motion (Doc. 9).  For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I.  BACKGROUND

Plaintiff protectively filed her application for benefits on December 21, 2018, alleging that she became disabled on May 1, 2018.  After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on October 14, 2020.  Plaintiff and a vocational expert, Elaine Cogliano, both testified at the hearing.

In a decision dated October 23, 2020, the Administrative Law Judge denied benefits.  He found, first, that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  Next, he determined that she had severe impairments including degenerative disc disease at all levels of the spine and obesity.  He also concluded, however, that her impairments, considered singly or in combination, did not meet or equal the level of severity required to qualify for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level and that she could occasionally climb ramps, stairs, ladders, ropes, and scaffolds and could occasionally balance, stoop, kneel, crouch, and crawl.  She could also occasionally work in an environment where vibrations were present.  Plaintiff did not have any past relevant work to consider, but the ALJ concluded that someone with this residual functional capacity and with Plaintiff's vocational profile could do certain unskilled, sedentary jobs including document preparer,

callout operator, and assembler.  He also found that such jobs exist in significant numbers in the national economy.  As a result, the ALJ concluded that Plaintiff did not meet the requirements for disability under the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises this issue:

The ALJ's decision is unsupported by substantial evidence, because the ALJ improperly relied on her [sic] own lay interpretation of the evidence to assess Plaintiff's severe and complex physical conditions, did not provide sufficient rationale for her [sic] decision, and failed to properly assess Plaintiff's well-supported subjective complaints.  (Doc. 7-1, at 1).

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 34 years old at the time of the administrative hearing, first testified that she injured her neck, lower back, and left leg in an automobile accident in April of 2018.  She said that since that date, she had been unable to stand or sit for more than 20 minutes at a time and used a cane when walking.  She also could not do heavy lifting and often dropped objects due to her carpal tunnel syndrome.  Plaintiff experienced muscle spasms daily and needed to rest even when climbing a short flight of stairs.  She had help with everyday chores and spent most of each day lying down.

When asked about her treatment regimen, Plaintiff said she took various medications for her back pain and also took a steroid to assist with swelling in her feet.  The medications did not cause side effects.  Plaintiff was reluctant to have surgery and had opted for injections but they did not help, so she was going to start physical therapy. She was able to shop but could not walk for more than five or six minutes in the store, and could walk only half a block without her cane.  She experienced pain as well when reaching overhead with her left arm.  There were days when the pain was so bad she could not get out of bed, and pain also interfered with her sleep.  Lastly, Plaintiff testified that she had been diagnosed with bipolar disorder.

The vocational expert, Ms. Cogliano, was asked questions about a person with Plaintiff's age, education, and work experience who was limited to light work with some postural restrictions.  In response, she testified that such a person could do unskilled jobs like assembler, ticket taker/price marker, and sorter.  However, a person who used a cane could not do any of those jobs, but he or she could be employed as a document preparer, call-out operator, or assembler at the sedentary level.  Those jobs could be done by someone who had to alternate between sitting and standing every 30 minutes, but not if he or she had to do so more frequently.  Other factors which would preclude employment included needing to lie down outside of scheduled work break times, being absent more than once per month, and being off task for more than 10% of the day.

-2-

## B.  Medical  Evidence

The relevant treatment records show the following.  Plaintiff was seen at the Erie County Medical Center emergency room on April 30, 2018, following a motor vehicle accident.  She reported experiencing lower back and neck pain.  Her left lower back was tender to palpation. X-rays of her neck and back were basically normal.  She was instructed to apply ice to the tender areas and discharged.  Several weeks later, she was complaining of pain in the neck, back, left shoulder, and left hip made worse by lifting, bending, walking, and sitting.  Her range of motion in the arms and legs was normal although her shoulder was tender to palpation and there were restrictions in the range of motion of the cervical and lumbar spines.  The assessment at that time, done by a nurse practitioner and signed off by a physician at RES Physical Medicine and Rehab Services, included sprains all along the spine as well as low back pain and radiculopathy. She was started on Soma and Tramadol and was going to continue with chiropractic treatment. At her next visit, Plaintiff said that the medications decreased her pain "adequately."  (Tr. 283). Over the next several months, she continued to report a decrease in pain but also said that her daily functioning had not improved.  She did experience an increase in pain when she ran out of her medications and said that with the medications, she could walk two blocks rather than one.

In December, 2018, Plaintiff was seen by nurse practitioner Collins and Dr. Huckell at Pinnacle Orthopedic and Spine Specialists.  She said that she had constant neck pain, tolerable mid-back pain, and intermittent lower back pain.  On examination, her gait was normal and she was not using a cane.  Again, she showed restriction in the range of motion of her spine.  The diagnosis was sprained ligaments in the thoracic and lumbar spines, and her conditions were expected to resolve within six months after the accident (which was the same conclusion reached when providers from that office saw her in June of 2018).  In 2019, Plaintiff told the providers at RES that she was getting six hours of uninterrupted sleep and said that her functioning, mood, and sleep pattern were all better with the medications.  She was seen at Pinnacle Orthopedic and Spine Specialists again in May, 2019, and said that her neck pain had improved.  Her diagnosis did not change and it was recommended that she continue her current chiropractic care and pain management programs.  Additional treatment notes from RES in 2019 continued to show that she was not using an assistive device and that her medications were helping her deal with her day-to-day symptoms including muscle spasms, pain, and depression.

## C.  Opinion Evidence

There are no opinions from treating sources apart from statements from the Pinnacle providers that Plaintiff was temporarily totally disabled, and no consultative examinations were conducted.  The medical records compiled through April, 2019 were reviewed by Dr. Lawrence, a state agency physician, who concluded that Plaintiff did not have any severe impairments.   Dr. Poss, a second state agency physician, agreed with that assessment.

## III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision

-3-

of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

As her first claim of error, Plaintiff argues that the ALJ improperly rejected the medical opinions and used his own lay judgment in making his residual functional capacity determination.  The only such opinions here were the two determinations made by the state agency physicians to the effect that Plaintiff had no severe impairments, and the opinion from the Pinnacle providers that she was temporarily totally disabled.  The ALJ did not find any of these opinions to be persuasive.  Without any medical determination of the extent to which Plaintiff could perform in the workplace, she asserts that the only basis for the ALJ's determination had to be his lay evaluation of raw medical data, and that this is not a proper method of adjudication.  In response, the Commissioner argues that the ALJ's residual functional capacity finding is administrative rather than medical in nature and needs only to be supported by the totality of the evidence in the record - which, in this case, according to the Commissioner, it is.

The ALJ's reasoning in support of his residual functional capacity finding can be summarized as follows.  He first concluded that her subjective report of symptoms was not entirely consistent with the medical evidence, noting that there were a number of treatment

options, like injections and physical therapy, which she had not pursued.  Next, he determined that no weight could be given to any medical opinions or prior administrative findings.  (Tr. 23).  Further explaining this statement, the ALJ first discounted the statements from the Pinnacle providers on grounds that their conclusion that Plaintiff was temporarily totally disabled was not a medical opinion but rather "a conclusory statement[] on the ultimate issue of disability" and did not include a function-by-function assessment of Plaintiff's ability to perform work-related activities.  (Tr. 23-24).  He then discounted the opinions of the two state agency physicians, reasoning that those opinions were "not persuasive because they [were] not consistent with the medical record, which supports a finding that the claimant's medically determinable impairments caused limitations in her ability to engage in work-related activities."  (Tr. 24).

As Plaintiff has noted, the residual functional capacity finding which the ALJ made did not rely on any medical opinions.  Therefore, in order for it to be sustained, it must have been a finding which a reasonable person could have made based on the totality of the evidence.  *See, e.g., Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (stating that "although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'") (citations omitted).  This does not mean, however, that an ALJ may simply manufacture a residual functional capcity finding out of whole cloth.  As this Court recently observed,

> In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).

>> In other words: An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

> *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

*Jessica Lynn J. v. Comm'r of Soc. Sec.*, 2022 WL 17494109, at *5 (W.D.N.Y. Dec. 8, 2022).

  In her reply, Plaintiff has cited numerous decisions from this Court which support her position that, in the absence of any medical opinion evidence as to functional capacity, and where a claimant clearly has physical impairments which affect her ability to work, an ALJ errs by not seeking further clarification from medical professionals as to what work functions the claimant can actually perform.  The Court has no hesitation in determining that, on the basis of this record - which contains essentially nothing more than raw medical data - the ALJ exceeded the scope of his expertise by crafting a very specific residual functional capacity finding, even one as restrictive as the one in this case.

  The remaining question is whether this error is harmless.  This Court briefly considered that issue in one of the cases cited by Plaintiff, *Latricia S. v. Kijakazi*, 2021 WL 5832762, at *4 (W.D.N.Y. Dec. 9, 2021), rejecting that argument because the ALJ had determined that Plaintiff could work at the medium exertional level, so that "a more limited RFC finding could lead to a different determination" on the question of disability.  Here, by contrast, there are fewer choices available for a more limited RFC finding - but there are still some, and some of them find support in either the medical records or in the lay evidence.  It would be easy enough to determine that where an ALJ gives a claimant the benefit of the doubt and limits her to a reduced range of sedentary work, any error in making a residual functional capacity finding without the benefit of even a single credible piece of medical opinion evidence is harmless, but that would excuse too much.  It may be the case that when a medical expert reviews all of the evidence here and, perhaps, performs a consultative examination, she or he will determine that Plaintiff can function in the work place at a level the same or even more demanding than the level arrived at by the ALJ.  However, in the absence of such evidence, the Court simply cannot overlook the ALJ's error.  Consequently, a remand is needed.

  This conclusion largely resolves Plaintiff's second claim of error concerning the lack of detail in the ALJ's reasoning process.  As to her third claim, new evidence will give the ALJ an opportunity to reassess the consistency of Plaintiff's subjective reporting of her symptoms with the totality of the evidence, so the Court leaves that issue to be reconsidered on remand as well.

### V.  CONCLUSION AND ORDER

  For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 7), **DENIES** the Commissioner's motion (Doc. 9), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four. Commissioner.

          **/s/ Terence P. Kemp**
          **United States Magistrate Judge**